UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA    )
    )
v.    )    No. 15-cr-10349-LTS
    )
LUIS ALBERTO ARIAS, aka    )
JOSE FOLCHRIVERA.    )
_____)

ORDER ON MOTION TO SUPPRESS (DOC. NO. 150)

January 12, 2017

Luis Alberto Arias moves to suppress evidence derived from the search and seizure of a blue Honda Accord he was driving at the time it was impounded. Doc. No. 150. As to the evidence from the car, Arias raises two issues: first, that the officers did not have probable cause to search or tow the blue Honda Accord and second, that the officers should have obtained a warrant before searching the car. The government opposed the motion, Doc. No. 158, and Arias replied, Doc. No. 163. Following a hearing, the Court requested supplemental briefing to clarify the facts. The government filed a supplemental memorandum and affidavit, Doc. No. 174, and Arias responded, Doc. No. 178. For the reasons stated below, the motion to suppress is DENIED.

FACTS[1]

The Drug Enforcement Administration (DEA) conducted a Title III investigation which revealed that Arias was an active drug trafficker in the Boston area, supplying heroin and cocaine to redistributors. Between August 12, 2015, and August 26, 2015, the DEA intercepted a number of calls between Arias and Juan Pena, a codefendant. Doc. No. 158-2 at 10–12. Pena wanted to

---

[1] The facts are gleaned from Arias's affidavit, Doc. No. 151-1, the Massachusetts State Police report, Doc. No. 158-1, the DEA reports, Doc. No. 158-2, 158-3, and 158-4, and Trooper Tryon's supplemental affidavit, Doc. No. 174-1.

obtain a supply of heroin from Arias. Id. On August 26, 2015, Arias sold the heroin to Pena and Pena made multiple calls to other unknown individuals to distribute the heroin. Id. at 13. Between September 18, 2015, and October 2, 2015, the DEA intercepted calls between Arias and multiple redistributors about supplying drugs. Id. at 13–16. In one call, Arias explained to another person how to operate "a really good hide" in the car. Id. at 14. On September 29, 2015, investigators observed Arias in a blue Honda Accord making multiple hand-to-hand deliveries of drugs. Id. at 16–17. On October 4, 2015, the DEA intercepted multiple calls between Arias and Carlos Quesada-Varment, a codefendant here, about drugs Arias intended to obtain from Quesada-Varment. Id. at 17–18.

Because of information gleaned from the intercepted calls, surveillance was established on Arias on October 4, 2015. Doc. No. 158-3 at 2. Arias and Andy Aviles, a codefendant, were observed in the blue Honda Accord picking up drugs at a motel in Sharon, MA, around 4:11 pm. Id. at 8–9. Investigators intercepted additional calls in which Arias discussed taking the drugs to customers to be tested and later coming back to the motel to return the drugs. Id. at 11. Investigators saw the blue Honda Accord arrive at the motel at 10:55 pm. Id. Arias and Aviles exited the vehicle and carried a large square white item into one of the rooms. Id. at 12. A few minutes later, Quesada-Varment exited that room and walked to a black Honda Accord with a large white bag with something square in the bottom. Id. Shortly thereafter, Quesada-Verment exited the vehicle without anything in his hands. Id.

On October 5, 2015, investigators saw the black Honda Accord leaving the motel. Id. at 14.  The vehicle was stopped on I-95 N with the assistance of Massachusetts State Police. Id. While searching the car, investigators found a hidden compartment with approximately 4 kilograms of cocaine and a loaded handgun. Id. at 14–15.

On October 7, 2015, DEA investigators intercepted calls indicating that Arias intended to go to Rhode Island to meet a source of supply. Doc. No. 158-4 at 3. Investigators followed the blue Honda Accord from Massachusetts to Rhode Island. Id. at 4. While Arias was driving, investigators intercepted a call in which Arias told an unidentified person that he would call "in two [] hours to see what you want." Id.  Arias arrived in Central Falls, RI. Id. When the blue Honda Accord arrived at approximately 3:27 pm, Arias and an unidentified person discussed Arias's arrival. Id. Investigators saw that only the passenger was in the blue Honda Accord. Id. At approximately 3:36 pm, investigators saw Arias return to the blue Honda Accord, recline the seat, and reach into the rear seat on the passenger's side. Id. Arias began to drive back to Massachusetts. Id. at 5. When he reached the Rhode Island border, surveillance was stopped. Id.

At approximately 4:10 pm while on routine patrol, Massachusetts State Trooper Michael Tryon saw the blue Honda Accord speeding. Doc. No. 158-1 at 1. Trooper Tryon stopped the car for going 81 mph, well over the 65 mph speed limit. Id. The driver (Arias) produced a Massachusetts license identifying him as Jose Antonio Folchrivera. Id. The registration stated that Marie Rodriguez owned the car. Id. The passenger was identified as Andy Aviles. Id. Trooper Tryon spoke with Arias and noticed that he was nervous and sweating. Id. Trooper Tryon also "noticed what appeared to be a large amount of US Currency in the center console area as well as money scattered on the floor of the vehicle and several cell phones inside the vehicle." Id. Arias and Aviles began speaking in Spanish to each other. Arias "then stared straight ahead and stated in Spanish that he did not speak English." Id. Trooper Tryon then received information from Troop H Communications that the passenger, Aviles, had a warrant for family abuse from Puerto Rico. Trooper Tryon asked Aviles to exit the vehicle, pat frisked him for weapons, and placed him in handcuffs "for [his] safety while waiting on confirmation of

extradition." Id. Arias and Aviles were speaking Spanish to each other so Trooper Tryon requested that another cruiser with a Spanish-speaking officer come to assist. Id. Trooper Tryon states that "At this time, Trooper Conway arrived" but it is not clear whether Trooper Conway is the Spanish-speaking officer Trooper Tryon requested. Id. Trooper Tryon asked Arias who the vehicle belonged to and Arias said Maria. Id. Trooper Tryon asked Maria's last name and Arias said he did not know. Id. Arias stated that he was on his way to Maria's house but he could not provide the address on the registration. Id.

According to Trooper Tryon, "As a result of the criminal indicators observed during [his] encounter with both [Arias] and Aviles, in particular the discrepancies relative to the registered owner and for safety purposes, [he] requested a tow for the vehicle." Id. According to the DEA report, "Based on probable cause from the Title III intercepted calls of [Arias]'s phone and [Arias]'s inability to provide information regarding the registered owner of the Honda, other than the registered owner's first name, the Honda was towed to the MSP-Foxboro Barracks." Doc. No. 158-4 at 5. While the reports did not make clear whether the DEA has contacted the Massachusetts State Police, Trooper Tryon's supplemental affidavit states that the DEA contacted the State Police, informed them of the Title III investigation, provided a description of the blue Honda Accord, and asked that the State Police have a Trooper perform a traffic stop of the vehicle to assist the investigation. Doc. No. 174-1 at 1.

Trooper Tryon asked if Arias and Aviles wanted to accompany the vehicle to the State Police barracks until the owner arrived but they declined and instead had Trooper Conway drop them off by an exit from the highway. Doc. No. 158-1 at 2. Trooper Tryon requested that a K-9 meet the car at the barracks to search for narcotics. Id. The K-9 unit arrived and alerted for narcotics on the blue Honda Accord. The vehicle was subsequently searched and a hidden

aftermarket compartment was found. Inside the compartment were approximately 2 kilograms of heroin and a loaded handgun. Multiple cell phones were also found.

When Arias and Aviles arrived at the State Police Barracks with the owner of the car, Marie Rodriguez, Massachusetts State Police arrested Arias and Aviles. Id. at 2–3. They were advised of their rights through a written statement in Spanish. Id. at 3.

ANALYSIS

The parties do not disagree about whether the initial stop of the car for speeding is reasonable. Trooper Tryon had reasonable suspicion of a traffic violation, speeding. Regardless, Trooper Tryon had probable cause based on the information the DEA provided. The issue is thus whether the impoundment of the car and the search of the car were conducted within the confines of the Fourth Amendment. The Court assumes without deciding that Arias has a reasonable expectation of privacy in the car and thus is able to challenge the stop and ensuing search.

1. *Impounding the car*

Arias claims that he is entitled to an evidentiary hearing because of factual inconsistencies that call into question whether Trooper Tryon had probable cause to impound the blue Honda Accord. While the State Police report contains no reference to the DEA investigation (and the DEA report contains only an opaque reference to pre-search communications with the trooper), Trooper Tryon's supplemental affidavit shows that he clearly had probable cause. The DEA informed the State Police Task Force Officer with the DEA, Trooper Mark Concannon, that based on the Title III investigation, the DEA believed that Arias had just picked up drugs in Central Falls, RI, and was driving back to Boston on I-95 N in a blue Honda Accord. Trooper Concannon informed Trooper Tryon of the information and asked that he conduct a traffic stop. Under the collective-knowledge rule (otherwise known as the fellow-officer rule), the DEA

5

agents' knowledge of the Title III evidence can be imputed to Trooper Tryon, providing probable

cause for the impoundment. See United States v. Cook, 277 F.3d 82, 86 (1st Cir. 2002) ("Here,

common sense suggests that, where law enforcement officers are jointly involved in executing an

investigative stop, the knowledge of each officer should be imputed to others jointly involved in

executing the stop."). Arias claims that an evidentiary dispute remains because Trooper Tryon's

police report did not discuss the DEA involvement. But Trooper Tryon's supplemental affidavit

clarifies that it is "standard practice" to not mention a federal investigation in a case like this one

"to protect the federal Title III wire investigation from premature disclosure." Doc. No. 174-1 at

1. Any ambiguity about the sequence of events has been clarified. Nothing in the record

contradicts Trooper Tryon's supplemental affidavit or his explanation for the omission of the

federal investigation from his police report. The Court need go no further. The Title III

information armed Trooper Tryon with probable cause to search the car and thus the Court need

not address whether the undisputed observations made by Trooper Tryon provide him a separate

basis for searching the car. Arias has made no argument that Trooper Tryon unlawfully detained

him likely because Trooper Tryon permitted Arias to leave the scene of the car stop.

    2. *Warrantless search of the car*

    Next Arias contends that the search of the car without a warrant was unlawful. The

automobile exception to the warrant requirement applies even though the car had been

impounded. "Under the 'automobile exception,' the only essential predicate for a valid

warrantless search of a motor vehicle by law enforcement officers is 'probable cause to believe

that the [vehicle] contains contraband or other evidence of criminal activity.'" United States v.

McCoy, 977 F.2d 706, 710 (1st Cir. 1992) (quoting United States v. Panitz, 907 F.2d 1267, 1271

(1st Cir. 1990)) (alteration in original); see Michigan v. Thomas, 458 U.S. 259, 261 (1982) ("It is

thus clear that the justification to conduct such a warrantless search does not vanish once the car has been immobilized; nor does it depend upon a reviewing court's assessment of the likelihood in each particular case that the car would have been driven away, or that its contents would have been tampered with, during the period required for the police to obtain a warrant."); United States v. Polanco, 634 F.3d 39, 43 (1st Cir. 2011) (noting that "an impressive convoy of auto-exception cases holds that if the requisite probable cause exists it matters not whether the vehicle was already parked, whether it was searched at another locale, or even whether agents had time to obtain a warrant first." (citations omitted)). The Title III information provided the probable cause to believe that the blue Honda Accord contained narcotics. Of course, Trooper Tryon's observations and the positive drug dog sniff further augmented the probable cause possessed by the trooper for the search. Once armed with probable cause, the warrantless search was proper.

   *3.   Statements to the police*

   In his motion, Arias asserts that "the Court should suppress statement [sic] made by Mr. Arias because they were obtained in violation of his right to remain silent under the Fifth Amendment of the United States Constitution." Doc. No. 150 at 1. The motion and Arias's Reply, Doc. No. 163, contain no argument about statements to the police. From the record, it appears that the only statement Arias made was that Maria owned the blue Honda Accord. Arias was not under arrest at that time. Without any argument from Arias on the topic, the request to suppress the evidence of Arias's statements is DENIED.

   *4.   Evidentiary hearing*

   Arias requests an evidentiary hearing to resolve the discrepancies he sees between Trooper Tryon's account of the seizure of the blue Honda Accord and the DEA's account. "A criminal defendant has no presumptive right to an evidentiary hearing on a motion to suppress."

United States v. Cintron, 724 F.3d 32, 36 (1st Cir. 2013). "[A] hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." Id. (quoting United States v. Francois, 715 F.3d 21, 32 (1st Cir. 2013)). As discussed above, Arias has not shown any factual discrepancies following Trooper Tryon's supplemental affidavit. Thus, no evidentiary hearing is warranted.

CONCLUSION

For the reasons stated above, the motion to suppress, Doc. No. 150, is DENIED. Counsel shall appear for a status conference on Tuesday January 17, 2017, at 3:00 pm.

SO ORDERED.

 /s/ Leo T. Sorokin
Leo T. Sorokin
United States District Judge